UNITED STATES of America, Appellee,

v.

Ronald J. HOLMES, Appellant.

No. 86–5286.

United States Court of Appeals,
Eighth Circuit.

Submitted March 13, 1987.

Decided July 2, 1987.

Daniel M. Scott, Federal Public Defender, Minneapolis, Minn., for appellant.

Franklin L. Noel, Asst. U.S. Atty., Minneapolis, Minn., for appellee.

Before McMILLIAN, BOWMAN, and WOLLMAN, Circuit Judges.

BOWMAN, Circuit Judge.

Ronald J. Holmes appeals his conviction on one count of escape from federal custody,[1] contending that the District Court erred in allowing him to be impeached by the admission of felony convictions obtained more than ten years before the time of the trial, and that the court erred by allowing the admission of two exhibits (by which the prosecution sought to explain the reason for Holmes's continued incarceration following his initial release) without deleting from them lists of unrelated criminal conduct and other infractions. Finding no abuse of discretion, we affirm.

On March 20, 1986, Holmes escaped from the Volunteers of America Residential Center (V.O.A.), a halfway house under contract to house federal prisoners prior to their release on parole. At the time of his escape, Holmes was serving a ten-year federal sentence imposed following his conviction as a felon in possession of a firearm. Holmes had been released from custody on his mandatory release date[2] (ten years less statutory good time earned) in early 1984, but following the commission of a crime and several other infractions, his release was revoked and he was returned to the custody of the Attorney General in October of 1984 to serve an additional 16 months. Government Exhibit 2; Transcript (Tr.) at 143. His presumptive parole date was set for November 25, 1985. Government Exhibit 2, Tr. at 24–25; 29. Thereafter, while in custody at the Federal Correctional Institution at Oxford, Wisconsin, defendant violated the rules of the institution and his release date was further delayed, until May 25, 1986. Government Exhibit No. 3; Tr. at 30. In February 1986, in preparation for his release, Holmes was transferred to the V.O.A. Tr. at 33. Residents at the V.O.A. were permitted to leave the halfway house during work hours, and received further freedoms as their stay progressed. Tr. at 77–78. Holmes's stay in the V.O.A. was uneventful until March 1986, when two of his urine samples provided evidence of illegal drug usage. Tr. at 46, 69–70. A hearing was set and further parole delays were anticipated. Tr. at 87, 92–93. On March 20, 1986, Holmes fled the V.O.A., moments before two federal marshals arrived to take him into more secure custody pending the outcome of the hearing on his suspected drug use. Tr. at 73, 128.

At trial, Holmes testified that he did not intend to escape and stated that he thought that his leaving the V.O.A. was merely a violation of V.O.A. rules and not an escape from custody. Tr. at 189. Moreover, he

---

1. Holmes was convicted pursuant to 18 U.S.C. § 751 and was sentenced to two years of imprisonment, to be served consecutively with the sentence he previously had received for being a felon in possession of a firearm.

2. As currently in force, 18 U.S.C. § 4164 provides that prisoners released on their mandatory release dates remain under supervision, as if released on parole, until the expiration of their sentence less one hundred and eighty days.

testified that he was under the influence of cocaine at the time he fled, and that upon further reflection, he had contacted his parole officer and had made plans to return to the V.O.A. on March 25. Tr. at 185–91. According to his testimony, the marshals had arrived to return him to custody as he was attempting to get a ride to the probation office. Tr. at 192–96. Holmes testified that he did not believe he had escaped because his probation officer had told him that he could "stay out" over the weekend. Tr. at 197. The probation officer's testimony conflicted with that offered by Holmes.

On cross-examination, the prosecution attempted to impeach Holmes's credibility by asking him about his eight prior felony convictions. Tr. at 199–201. Among these convictions were several that were over ten years old.[3] The District Court, finding that "veracity is certainly at issue here" and that Holmes's "credibility is an important factor for the jury to consider," Tr. at 198, admitted over Holmes's objection four of the convictions that were over ten years old. The court did not allow the prosecution to bring in a 1969 escape conviction, stating, "I think [it] is just too prejudicial to bring in in a case like this.... [I]t might have the effect of making the jury tend to believe because he escaped once that he will escape again. Obviously, that is not the purpose of allowing these convictions to be admitted into evidence. Rather, they go to the veracity or the truthfulness of the witness." Tr. at 199. Holmes argues that the District Court abused its discretion both because it allowed these convictions into evidence and because it did not make an express finding that the pro-

bative value of including this evidence "substantially outweighs its prejudicial effect," as required by Rule 609(b) of the Federal Rules of Evidence.[4]

"The weighing of probative value against prejudicial effect [under Rule 609(b)] is committed to the sound discretion of the trial court." *United States v. Foley,* 683 F.2d 273, 278 (8th Cir.), *cert. denied,* 459 U.S. 1043, 103 S.Ct. 463, 74 L.Ed.2d 613 (1982); *see also United States v. Little,* 567 F.2d 346, 350 (8th Cir.1977), *cert. denied,* 435 U.S. 969, 98 S.Ct. 1608, 56 L.Ed.2d 60 (1978). This Court will defer to the evidentiary rulings made by a district court and will not overturn those determinations absent an abuse of discretion. *United States v. Reeves,* 730 F.2d 1189, 1196 (8th Cir.1984); *Foley,* 683 F.2d at 278.

We find no abuse of discretion in the District Court's decision to allow Holmes to be impeached by cross-examination concerning his prior convictions. Under the peculiar facts of this case, the jury was already well aware that Holmes had a criminal record. His previous conviction as a felon in possession of a firearm, for which he was incarcerated at the time of his escape, clearly indicated prior felonious activity in the period before 1978. Moreover, the probative value of delving into convictions more than ten years old is substantially increased by the number and frequency of Holmes's felony convictions in the ten-year period immediately preceding his last incarceration. Because of his lengthy and steady record of criminal activity, dating from his youth and continuing to the time of the conviction under which he was in custody when he took his unau-

---

3. The prior convictions with which Holmes's testimony was impeached were as follows: 1) conviction in 1978 as felon in possession of a firearm; 2) conviction in 1974 on a weapons offense; 3) conviction in 1974 for possession of marijuana; 4) conviction in 1970 on a weapons offense; 5) conviction in 1963 for aggravated robbery; 6) conviction in 1960 for receipt of stolen property; and 7) conviction in 1955 for burglary. On direct examination, Holmes described the 1978 and 1974 convictions. Tr. at 155–56. On appeal, Holmes contests only the admission of the latter four convictions, each of which was over twelve years old at the time of the trial. Brief of Appellant at 5.

4. Rule 609(b) states, in pertinent part:

   **Time Limit.** Evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for that conviction, whichever is the later date, *unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect.*

   (Emphasis added.)

thorized leave from the V.O.A.,[5] Holmes is in a poor position to claim entitlement to the presumption that the probative value of prior convictions decreases over time. Clearly, the District Court reasonably could find the probative value of the impeachment evidence to be substantial. As the court noted, credibility was necessarily a major factor in the jury's determination of innocence or guilt. In *United States v. Spero*, 625 F.2d 779, 781 (8th Cir.1980), we stated, "where the credibility of one witness must be weighed directly against that of another, the probative value of a prior conviction may well be enhanced, rather than diminished."

Holmes refers us to *United States v. Cavender*, 578 F.2d 528 (4th Cir.1978), noting that the Fourth Circuit required a district court to support its determination under Rule 609(b) by making "specific finding[s]" on the record as to the "specific facts and circumstances" which make admission of the more-than-ten-year-old convictions appropriate. *Id.* at 532. This Circuit, however, never has required such specific findings. *See, e.g., Spero*, 625 F.2d at 781 (declining to follow *Cavender*.) The District Court received written memoranda and heard oral argument on the issue. Its decision to exclude the escape conviction is a clear indication that it carefully considered its responsibility under Rule 609(b) to include only evidence whose probative value substantially outweighed its prejudicial effect. We find no abuse of discretion in the District Court's determination to admit Holmes's more-than-ten-year-old convictions for purposes of impeachment.

Holmes asserts that the District Court also erred by admitting into evidence two government exhibits which, by describing misconduct both while Holmes was on parole and following his return to prison in October 1984, purported to explain to the jury the reason for Holmes's continued incarceration in 1986 following his initial release in 1984. Exhibit 2, a notice of revocation of mandatory release, lists four reasons for the revocation of Holmes's 1984 release: possession of a controlled substance; failure to submit a truthful supervision report; failure to report an arrest/conviction; and unauthorized possession of narcotics/dangerous drugs. Exhibit 3, a notice of extension of Holmes's presumptive parole date from November 1985 to May 1986, provides three reasons for rescission of parole: possession of marijuana; possession, introduction or use of narcotics, marijuana or drugs not prescribed by the medical staff; and refusing to provide a urine sample. Holmes contends that the District Court's decision to admit these exhibits violated Rules 609, 404(b), and 403 of the Federal Rules of Evidence.[6]

Initially, we note that because the exhibits were part of the prosecution's case-in-chief, Rule 609, which refers only to impeachment of witnesses, is inapplicable. Rule 404(b) also is inapplicable. As we held in *United States v. DeLuna*, 763 F.2d 897, 913 (8th Cir.), *cert. denied, sub nom., Thomas v. United States*, 474 U.S. 980, 106 S.Ct. 382, 88 L.Ed.2d 336 (1985), "where evidence of an act and the evidence of the crime charged are inextricably intertwined, the act is not extrinsic and Rule 404(b) is not implicated." *See also United States v. Derring*, 592 F.2d 1003, 1007 (8th Cir.1979). Here, the notice of parole revocation and the notice of extension of presumptive release date were necessary to explain the continued, legal incarceration of

---

**5.** On cross-examination, Holmes, who was 49 at the time of the trial, stated: "I have been in prison since I was fourteen years old, except for about eighteen months." Tr. at 201.

**6.** Rule 404(b) of the Federal Rules of Evidence states:

**Other crimes, wrongs or acts.** Evidence of other crimes, wrongs, or acts is not admissible to prove the character of the person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Rule 403 of the Federal Rules of Evidence states:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Holmes. The government had to show that Holmes's stay in the V.O.A. was mandatory and that his disappearance from the premises was an "escape." In order to establish these facts, the government submitted into evidence the individual notices. Appended to these notices were the lists of violations bringing about the custody extensions. Failure to supply these explanations might have created a gap in the jury's understanding of Holmes's continuing custody, perhaps allowing speculation as to whether the custody was mandatory. Accordingly, the notices were material and intrinsic to the government's case-in-chief, and Rule 404(b) is not implicated.

■ Finally, Holmes challenges the admission of the notices under Rule 403, contending that the government's sole object in proffering this evidence was to assault his character, and therefore that its probative value was substantially outweighed by the danger of unfair prejudice. This Court will give broad deference to a district court's determinations under Rule 403. *See, e.g., Rothgeb v. United States,* 789 F.2d 647, 650 (8th Cir.1986). "We do not reweigh the value of the material against its potential for harm to the defendant, but determine only whether the district judge abused his discretion in admitting it." *Derring,* 592 F.2d at 1007. Rule 403 requires that the District Court weigh the probative value of the evidence against its prejudicial effect; relevant testimony is assumed admissible, *see* Fed.R.Evid. 402, unless its probative value is "substantially outweighed" by the possibility of unfair prejudice. Fed.R.Evid. 403. Once the government successfully had demonstrated the probative value of the evidence, the District Court's role was simply to determine whether admission of these exhibits would create an "undue tendency to suggest decision on an improper basis." Notes of Advisory Committee, Fed.R.Evid. 403. In ruling on this issue, the District Court clearly considered the prejudicial effect of the evidence, going so far as to require that evidence of a dangerous weapons offense listed on Government Exhibit 2 be excised to avoid unfair prejudice. Tr. at 28. Based on our review of the transcript, we are satisfied that the District Court carefully exercised its discretionary power to exclude unfairly prejudicial evidence. The court determined that the exhibits, as redacted, were admissible under the balancing test of Rule 403. We find no abuse of discretion in the court's admission of the exhibits.

For the reasons set forth above, Holmes's conviction is AFFIRMED.