UNITED STATES of America, Appellee,

v.

Raymond AMERSON, a/k/a Raymond
Amerson–Bey, Appellant.

UNITED STATES of America, Appellee,

v.

Gerald HOPKINS, a/k/a Gerald
Hopkins–Bey, Appellant.

UNITED STATES of America, Appellee,

v.

Gary HAMMELL, a/k/a Gary
Hammell–El, Appellant.

Nos. 89–2807EM, 89–2838EM,
89–2871EM.

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 12, 1990.

Decided July 5, 1991.

Stephen H. Gilmore, St. Louis, Mo., for appellant Raymond Amerson.

Allen I. Harris, St. Louis, Mo., for appellant Gerald Hopkins.

Anthony J. Sestric, St. Louis, Mo., for appellant Gary Hammell.

Dean R. Hoag, St. Louis, Mo., for appellee.

Before FAGG and BEAM, Circuit Judges, and WOODS,* District Judge.

FAGG, Circuit Judge.

Defendants Raymond Amerson, Gerald Hopkins, and Gary Hammell appeal their convictions as felons in possession of firearms. We reverse and remand for a new trial.

On March 8, 1988, Officers Finney and Woods of the St. Louis police department attempted to stop an automobile driven by Amerson for running a stop sign. Amerson did not pull over, but continued driving with the officers in pursuit. Officer Finney saw three guns thrown from the automobile before the officers succeeded in stopping the vehicle. According to Officer Finney, Hammell threw one gun out the right rear-door window, while Amerson handed a gun to Hopkins who then threw two guns out the right front-door window. Although three guns were recovered from the shoulder of the road, defense witnesses testified they saw no guns thrown from the automobile driven by Amerson. The jury returned guilty verdicts against all three defendants.

* The HONORABLE HENRY WOODS, United States District Judge for the Eastern District of

I.

■ The defendants contend the trial court committed reversible error by refusing to excuse for cause potential jurors who indicated during voir dire they would give greater credence to testimony of police officers than testimony of other witnesses. As the government acknowledges, this case turned on witness credibility, pitting police testimony against that of defense witnesses. Thus, discovering whether jurors would give special weight and credence to the testimony of police officers was crucial to ensuring the defendants received a fair trial. During questioning by the defendants' counsel, several jurors admitted they were more inclined to believe police testimony than testimony of other witnesses because of the officers' official positions:

Mr. Gilmore (attorney for Amerson): [The attorney for the government] further mentioned the fact that most of his witnesses will be police officers.... And I'll ask you, by that fact alone, by those witnesses, would any of you give more credibility to those witnesses ...?

. . . .

Juror Walker: From my past history, I might lean towards the officers.

Mr. Gilmore: You might lean towards the officers. You've already got your mind made up that way as you sit there, is that correct?

Juror Walker: Yes.

Mr. Gilmore: By past history, is that jury duty?

Juror Walker: My father. (Juror Walker had earlier indicated his father formerly was a law enforcement official.)

\* \* \* \* \* \*

Mr. Fredman (attorney for Hammell): ... Because a person happens to be a police officer, that doesn't mean that he's either any less or any more credible of a witness than any other person....

Arkansas, sitting by designation.

After that person takes the witness stand, you're to evaluate that person's testimony on the basis of your senses, on the basis of how you [perceive] that person's credibility.... Do any one of you have any problems with that? Because it's so very important, especially in this type of case.

Juror Pilliard: Well, I think it's going to be unique, because [we all] tend to want to trust our policemen.

....

Mr. Fredman: But the question is if there is a dispute over some testimony, ... if there's a disagreement, would you ... tend to give more weight to the testimony of a police officer?

Juror Pilliard: Well, I think that sometimes in some instances you would.

....

Mr. Fredman: Okay. So without putting words in your mouth, would your answer to my question be yes?

Juror Pilliard: Yes, I'm sure it would, to be honest.

Mr. Fredman: Anyone else feel the same way? Mr. Carron? Mr. Amoroso, how do you feel?

Juror Amoroso: I feel basically the same way. I've grown up to trust and believe ... what the policemen say and do are right, simply because they know, or are supposed to know[,] the laws.... I would have a tendency, if ever so slightly, to believe [a police officer's] testimony as compared to anybody else's....

Mr. Fredman: Mr. Carron?

Juror Carron: I feel the same way. I would tend to believe a police officer.

Mr. Fredman: Mr. Guller?

Juror Guller: I would also.

At the conclusion of voir dire, defense counsel sought to have jurors Walker, Pilliard, Amoroso, Carron, and Guller excused for cause based on their admitted bias in favor of police officer testimony. The court removed juror Pilliard on other grounds but refused to strike the remaining four jurors for cause.

Faced with a clear showing of actual partiality for police testimony on the part of the challenged jurors, the district court abused its discretion by refusing to excuse those jurors for cause. *See United States v. Tibesar*, 894 F.2d 317, 319 (8th Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 79, 112 L.Ed.2d 52 (1990). Although the district court has substantial discretion in conducting voir dire, the exercise of that discretion is subject to "the essential demands of fairness." *United States v. Cassel*, 668 F.2d 969, 971 (8th Cir.) (quoting *Aldridge v. United States*, 283 U.S. 308, 310, 51 S.Ct. 470, 75 L.Ed. 1054 (1931)), *cert. denied*, 457 U.S. 1132, 102 S.Ct. 2957, 73 L.Ed.2d 1348 (1982). When, as here, a case turns on the credibility of law enforcement officers, the district court has a responsibility to ensure the jurors are not predisposed to believe the testimony of the officers is inherently more credible than that of other witnesses. *See, e.g., United States v. Evans*, 917 F.2d 800, 806 (4th Cir.1990); *Darbin v. Nourse*, 664 F.2d 1109, 1114–15 (9th Cir.1981); *Brown v. United States*, 338 F.2d 543, 545 (D.C.Cir. 1964). Indeed, a defendant cannot receive a fair trial at the hands of jurors "who [are] inclined to give unqualified credence to [ ] law enforcement officer[s] simply because [they are] officer[s]." *Chavez v. United States*, 258 F.2d 816, 819 (10th Cir. 1958) (emphasis omitted), *cert. denied*, 359 U.S. 916, 79 S.Ct. 592, 3 L.Ed.2d 577 (1959). When jurors express this kind of bias, the district court must either "excuse [the jurors] for cause, or by instructions and additional questions convince the [jurors] that there is no special credence due the testimony of [police officers]." *Evans*, 917 F.2d at 806. By doing neither, the district court failed to "fulfill [its] duty to remove prospective jurors who [would] not be able to follow impartially the court's instructions and evaluate the evidence," *Cassel*, 668 F.2d at 971, and thus committed reversible error.

## II.

Because we remand for a new trial, we briefly address several of the defendants'

arguments that are likely to arise on retrial.

■ The defendants contend the trial court committed error by including an instruction on constructive possession when the government tried its case on an actual possession theory. We agree. It is well established that an instruction should not be given if it lacks evidentiary support. *United States v. Lavallie*, 666 F.2d 1217, 1219 (8th Cir.1981). Through the testimony of Officer Finney, the government presented sufficient evidence to prove each defendant actually possessed a gun. Nevertheless, the government sought a constructive possession instruction, arguing the jury could find Amerson constructively possessed the gun he handed to Hopkins during the brief instant before Hopkins threw it and another gun out the front-door window.

Simply put, the government's evidence does not support an instruction on constructive possession. Officer Finney's testimony that Amerson handed a gun to Hopkins provided ample evidence of Amerson's actual possession. The very nature of Amerson's hurried abandonment of his gun through Hopkins, however, makes clear that an essential component of constructive possession—retention of control over the gun itself—was not present. *See United States v. Schubel*, 912 F.2d 952, 955 (8th Cir.1990). Thus, the district court should have declined the government's invitation to instruct the jury on constructive possession. If on retrial the evidence against the defendants remains the same, the court should instruct the jury on actual possession only.

The defendants also contend the trial court committed error by refusing to grant them separate trials. We have considered this argument and conclude it lacks merit. The defendants have failed to show "clear prejudice as a result of the trial court's denial of [their] motion[s] and an abuse of the trial court's discretion." *United States v. King*, 803 F.2d 387, 391 (8th Cir.1986) (per curiam) (citation omitted); *see also United States v. Nevils*, 897 F.2d 300, 305 (8th Cir.), *cert. denied*, —— U.S. ——, 111

S.Ct. 125, 112 L.Ed.2d 93 (1990). The defendants may properly be tried together on retrial.

■ Defendant Hopkins claims he was denied his right to a speedy trial under the Speedy Trial Act, 18 U.S.C. §§ 3161–3174 (1988). We disagree. The trial court granted the government's motion for a continuance because an essential government witness, Officer Finney, broke his leg and developed complications preventing his appearance on the scheduled trial date. *See id.* § 3161(h)(3)(A). We believe the trial court properly concluded the ends of justice served by the continuance outweighed the interests of the public and the defendant in a speedy trial. *See id.* § 3161(h)(8)(A); *United States v. Meyer*, 803 F.2d 246, 247–48 (6th Cir.1986) (right to speedy trial not violated when essential government witness unavailable because of honeymoon), *cert. denied*, 480 U.S. 936, 107 S.Ct. 1580, 94 L.Ed.2d 770 (1987).

■ Hopkins also argues the district court committed prejudicial error by allowing the government to introduce evidence of his past felony convictions, notwithstanding his offer to stipulate to his status as a felon. Again, we disagree. This court has repeatedly held the government need not accept a defendant's stipulation to previous felony convictions in lieu of introducing proof of those convictions. *United States v. Blade*, 811 F.2d 461, 466 (8th Cir.), *cert. denied*, 484 U.S. 839, 108 S.Ct. 124, 98 L.Ed.2d 82 (1987).

Finally, Hopkins argues the district court abused its discretion by permitting the government to impeach a defense witness with a felony conviction more than ten years old. *See* Fed.R.Evid. 609(b). In *United States v. Thomas*, 914 F.2d 139 (8th Cir.1990), we considered this same issue, involving the same defense witness, and concluded the district court did not abuse its discretion in permitting the government to impeach the witness with his 1972 felony conviction. *Id.* at 142–43. Likewise, we do not believe the district court abused its discretion in this case.

## III.

Because we reverse and remand this case for a new trial, we need not address the arguments Amerson and Hopkins make concerning their guidelines sentences. Accordingly, the defendants' convictions are reversed and this case is remanded to the district court for a new trial.